■ In the Matter of TYNETTA Q. T. LINDA S. et al., Appellants; NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.—In an adoption proceeding, the petitioners appeal from an order of the Surrogate's Court, Nassau County (Radigan, S.), dated January 6, 1992, which denied their motion to

vacate a prior order of the same court, dated January 3, 1991, dismissing the adoption proceeding.

Ordered that the order is affirmed, without costs or disbursements.

On August 16, 1989, Tynetta, who was two months old, was placed with the petitioners by the natural mother for private adoption. Two days later, the petitioners commenced the instant adoption proceeding. Shortly thereafter, the petitioners moved with Tynetta and their family to Georgia.

As of June 1990 the adoption was still not finalized, since a final home study evaluation had not be completed. The Georgia authorities reportedly believed that the Interstate Compact on the Placement of Children (enacted in New York as Social Services Law § 374-a) prevented them from conducting such an evaluation. By order dated June 13, 1990, the Surrogate's Court determined that the Interstate Compact did not apply. In addition, the Surrogate's Court sua sponte fixed the fee for the natural mother's court-appointed attorney at $750, inclusive of disbursements. The petitioners were informed by their retained New York attorney of their obligation to pay the natural mother's attorney's fee.

The petitioners, however, viewed the award of the fee as morally reprehensible and tantamount to "buying the child" and declared that they would not complete the adoption if it was contingent upon their paying the fee. Thus, on December 21, 1990, the petitioners' attorney advised the Surrogate's Court that the petitioners would not proceed with the adoption. On December 24, 1990, the petitioners contacted the Surrogate's Court themselves and said that they wanted to bring Tynetta back to New York. They were asked to wait until the holidays were over.

Nevertheless, on December 27, 1990, the petitioners drove their family and Tynetta from Georgia and arrived late that afternoon in Mineola at the Nassau County Department of Social Services (hereinafter the DSS). The petitioners informed the DSS social workers that they wanted to leave Tynetta with the DSS because they could no longer undergo the stress of the adoption proceeding. The DSS was reluctant to take Tynetta, as this had been a private placement adoption and their office had no prior involvement with this case.

Thereafter, the petitioners took Tynetta to the home of a person who allegedly was willing to care for Tynetta. The record does not clearly reveal how that person's name was obtained. In any event, the person was not at home and

Tynetta was left there in the care of the person's sister. At the time, Tynetta had resided with the petitioners for 16 months and was 18 months old.

The following day, Friday, December 28, 1990, the person informed the DSS social workers that she had only been willing to care for Tynetta that one night and that she had no interest in adopting the child. The DSS then contacted the petitioners' attorney, who in turn asked the petitioners to pick up Tynetta. They refused.

After the Surrogate's Court was apprised by the DSS that Tynetta had been left in New York and that the petitioners had returned to Georgia, the Surrogate, by order dated January 3, 1991, dismissed the adoption proceeding and transferred custody of Tynetta to the DSS. The Surrogate also transferred the matter to Family Court, Nassau County.

On January 14, 1991, the petitioners wrote to the Surrogate requesting that Tynetta be returned to them. The Surrogate's Court informed them that the adoption proceeding had been dismissed and the matter transferred to the Family Court. Thereafter, on February 27, 1991, and again on March 13, 1991, the petitioners appeared *pro se* before the Family Court and asked that Tynetta be returned to them. The Family Court directed the petitioners to apply through the DSS to adopt Tynetta. By order dated March 13, 1991 and amended May 13, 1991, the Family Court approved the placement of Tynetta with the DSS.

By letter dated May 1, 1991, the DSS rejected the petitioners' application to adopt Tynetta, informing them that the child was currently residing with people who wished to adopt her and who had executed an adoption agreement. Thereafter, the petitioners retained their current attorney and commenced a proceeding pursuant to CPLR article 78 against the DSS and others. By judgment entered October 11, 1991, the Supreme Court dismissed the petition. In its memorandum decision, the Supreme Court advised the petitioners that their proper remedy was to move in the Surrogate's Court to vacate the order dated January 3, 1991, dismissing the adoption proceeding. The petitioners so moved.

In an order entered January 6, 1992, Surrogate Radigan denied the petitioners' motion to vacate the order dated January 3, 1991. On appeal, the petitioners argue, *inter alia,* that the order dated January 3, 1991, should have been vacated on the ground that the Surrogate's Court lacked the authority to award custody of Tynetta to the DSS. We disagree.

Domestic Relations Law § 75-d (1) (c) vests a court with the authority to make a custody determination when "the child is physically present in this state and (i) the child has been abandoned *or* (ii) it is necessary in an emergency to protect the child" (emphasis supplied). It is undisputed that Tynetta was present in this State when the order dated January 3, 1991, was issued. Furthermore, it is clear that the petitioners had abandoned her. On December 27, 1990, the petitioners drove from Georgia to New York with the expressed intention of leaving Tynetta with the DSS and returning to Georgia without her. They admittedly left Tynetta with the sister of a person who reportedly had an interest in adopting the child, but whom they had never met. Their intention to abandon Tynetta at that time could not have been any more obvious.

Moreover, the Surrogate's Court had the authority to transfer custody of Tynetta to the DSS on the further ground that there was an emergency situation which necessitated her protection. The day after the petitioners left Tynetta in New York, the woman Tynetta was left with informed the DSS that she was no longer willing to care for Tynetta and had no intention of adopting her. At that point, Tynetta was in need of supervision. Accordingly, the Surrogate's Court had no choice but to act to transfer custody of Tynetta to the DSS so that it could place the child in a home where she would be cared for. Thus, Domestic Relations Law § 75-d (1) (c) (i) and (ii) conferred jurisdiction on the Surrogate's Court and permitted it to transfer custody of Tynetta to the DSS.

We have considered the petitioners' remaining contentions and find them to be without merit. Thompson, J. P., Lawrence, Miller and Ritter, JJ., concur.